# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | | |
|---|---|---|
| CAPITAL CITY INSURANCE COMPANY, INC., and REDLAND INSURANCE COMPANY | * * * * | |
| Plaintiffs, | * * | |
| vs. | * * | CV 511-039 |
| FORKS TIMBER COMPANY, INC, AND HERITAGEBANK OF THE SOUTH, AS SUCCESSOR-IN-INTEREST TO THE TATTNALL BANK, | * * * * * | |
| Defendants. | * | |

### ORDER

Presently before the Court are three motions for summary judgment, one filed by Plaintiffs Capital City Insurance Company, Inc. ("Capital City") and Redland Insurance Company ("Redland") (collectively "Insurers"), Dkt. No. 22, and one by each of the two Defendants, Forks Timber Company, Inc. ("Forks"), Dkt. No. 19, and HeritageBank of the South ("HeritageBank"), Dkt. No. 24, (collectively "Defendants"). For the reasons stated below, the Insurers' motion is **GRANTED** and Defendants' motions are **DENIED**.

AO 72A
(Rev. 8/82)

1

## BACKGROUND[1]

Forks is a logging company that entered into a business relationship with James Hardwick ("Hardwick") to remove timber from Hardwick's land. Hardwick represented that he owned the timber and that it was unencumbered by liens. Pursuant to the agreement with Hardwick, Forks took no steps to confirm Hardwick's representations. Forks harvested approximately eighty thousand dollars worth of timber from Hardwick's property.[2] Shiver Aff. ¶ 8, Dkt. No. 24, Ex. A.

Unbeknownst to Forks, HeritageBank (or its predecessor-in-interest) held a security interest in the timber. After learning that Forks had harvested the timber, HeritageBank initiated a lawsuit in the Superior Court of Bacon County, Georgia ("Bacon County Litigation"). HeritageBank's complaint in the Bacon County Litigation asserts that Forks is liable for conversion of HeritageBank's security interest. Bacon Cnty. Compl., Dkt. No. 24, Ex. B. Forks contacted the Insurers – the issuers of Forks's commercial general liability insurance policies ("CGL Policies") – seeking indemnification and representation in the Bacon County Litigation. The Insurers

---

[1] Few, if any, facts are in dispute. The parties agree about the circumstances of the timber harvest and the procedural posture of the underlying litigation, but fiercely disagree about the legal implications of Forks's conduct. See Insurers' Statement of Facts, Dkt. No. 22, Forks's Resp., Dkt. No. 37, Forks's Statement of Facts, Dkt. No. 33, and Insurers' Resp., Dkt. No. 39.

[2] The value of the timber is not material to this action, and may be disputed later. The fact is provided only for narrative context.

refused, arguing that Forks's conduct and the resulting harm did not constitute a covered loss. Specifically, the Insurers stated that the circumstances of the timber harvest did not constitute an "occurrence" as the CGL policies define that term. The Insurers filed this suit seeking a declaratory judgment regarding the Insurers' obligations under the CGL Policies.

## LEGAL STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Fed. R. Civ. P. 56(c); Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990)). The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a

genuine issue of fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

## DISCUSSION

The Insurers seek declaratory judgment that "they are not required nor obligated under law to provide any coverage, indemnification or defense in regards to the underlying complaint." Dkt. No. 22, at 6. Forks and HeritageBank are named defendants in this suit, and both argue that the Insurers are obligated to defend and indemnify Forks. Forks Mot. Summ. J., Dkt No. 19; HeritageBank Mot. Summ. J., Dkt. No. 24. All parties agree that Forks's CGL policies are the controlling agreements, and that the issue is whether the facts in this case constitute an "occurrence" under those policies. The parties further agree that the CGL policies define an occurrence as an "accident," but that the policies fail to define the term accident. The parties disagree on whether the facts of this case constitute an accident under the policies.

On the surface, the Insurers' argument is simple: Forks intentionally cut down the disputed trees – i.e., Forks meant to cut down the timber, and did just that – and an intentional act does not constitute an accident. The Insurers support their argument by pointing to the underlying Bacon County complaint. In the Bacon County complaint, HeritageBank asserts that Forks is liable for conversion, which is an intentional tort. Forks,

on the other hand, argues that it was negligent in failing to perform a title search before cutting down the trees, and therefore an "accident" occurred, as that term is contemplated by the CGL policy. Forks's Mot. Summ. J. 2, Dkt. No. 19.

**I. Insurers' Position**

The Insurers rely primarily on Mindis Metals, Inc. v. Transp. Ins., Co., 209 F.3d 1296 (11th Cir. 2000). Mindis Metals is a single paragraph opinion, relying almost entirely on a district court order issued in an unrelated dispute, Macon Iron & Paper Stock Co. Inc. v. Transcontinental Ins., Co., 93 F. Supp. 2d 1370 (M.D. Ga. 1999).[3]

In Macon Iron, the plaintiff, Macon Iron, was in the scrap metal business. Macon Iron purchased several used railroad cars from an individual who worked for Georgia Central Railroad. However, the individual had no authority to sell the cars. Upon learning of the sale, Georgia Central brought suit against Macon Iron for racketeering, fraud, conversion, and punitive damages. Macon Iron's insurers refused to defend the suit, arguing that the transactions were not covered occurrences. Like the CGL Policies in this dispute, the commercial general liability

---

[3] Aside from reproducing the Macon Iron opinion, the Eleventh Circuit in Mindis Metals, offered only a single paragraph of analysis. In that paragraph, the Eleventh Circuit noted a lack of consensus among jurisdictions as to whether "intentional conduct premised on erroneous information" constitutes an "accident" under a commercial general liability insurance policy. The court stated, however, that no such ambiguity exists in Georgia: "In Georgia . . . such conduct is not an 'accident.'" In support, the Mindis Metals court attached a copy of the Macon Iron opinion.

policies in Macon Iron defined an occurrence as an accident, but did not define accident.  Thus, the issue before the Macon Iron court was whether the transactions, and resulting harm to Georgia Central, constituted accidents under the CGL policies.

The court held that Macon Iron's conduct did not constitute an accident.  In reaching its conclusion, the court cited a treatise on insurance law that described an accident as "an unusual or unexpected event, happening without negligence; chance or contingency; happening by chance or unexpectedly; an event from an unknown cause or an unexpected event from a known cause."  Mindis Metals, 209 F.3d at 1300 (quoting 11 Couch on Insurance § 44:288 at 443 (2d ed. 1982)).  The court further stated: "[M]any 'accidents' involve intentional conduct with unexpected results.  But when the result of the intentional act is said to be unexpected, it is the direct and immediate result referred to, not the indirect consequences or *legal significance* of a particular act."  Id. at 1301 (emphasis added).  Ultimately, the court concluded that there was "nothing accidental" about Macon Iron's actions or the consequences of those actions.

The Insurers in the present case are confident that Macon Iron resolves the issue before the Court.  The Insurers state that Forks's mistake about the absence of encumbrances on the disputed timber is essentially the same as Macon Iron's mistake

6

about the true ownership of the rail cars.  Although Forks may have made a mistake about the legal consequences of its conduct, the Insurers argue that Forks's actions and the consequences were purely intentional.

**II. Defendants' Position[4]**

While the Insurers rely on Macon Iron, Forks and HeritageBank rely on the Georgia Supreme Court's recent decision American Empire Surplus Lines Ins. Co. v. Hathaway Devel. Co., Inc., 707 S.E.2d 369 (Ga. 2011).  In Hathaway, the plaintiff, a contractor, sued its subcontractor for damages caused by the subcontractor's faulty workmanship.  The subcontractor's faulty plumbing work caused property damage to neighboring property being built by the contractor.  The subcontractor failed to answer, and default judgment was entered in favor of the contractor.  The contractor then sought payment from American Empire, the subcontractor's insurer.  American Empire refused to pay, arguing that the contractor's claim was not covered under the subcontractor's CGL policy.  American Empire argued that the faulty workmanship performed by the subcontractor was not an

---

[4] Although Forks and HeritageBank are adversaries in the Bacon County Litigation, the two are co-defendants in the present matter.  Both Forks and HeritageBank argue that the Insurers are obligated to indemnify and defend Forks in the Bacon County Litigation.  Forks and HeritageBank have filed motions for summary judgment requesting declaratory judgment in favor of coverage under the CGL Policies. Dkt. Nos. 19, 24.  Because the Defendants have the same interest in this case, and because their motions for summary judgment are largely duplicative, the Court addresses the Defendants' arguments together.

occurrence because it was not an "accident" as that term is used in the CGL policy.

The Georgia Supreme Court held that damage to surrounding property caused by the subcontractor's faulty workmanship was an "accident" and therefore covered by the policy. Hathaway, 707 S.E.2d at 369. The Hathaway court began by looking at the commonly accepted meaning of the term accident. The court stated:

> It is commonly accepted that, when used in an insurance policy, an "accident" is deemed to be "an event happening without any human agency, or, if happening through such agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens. . . . [I]n its common signification the word means an unexpected happening without intention or design.

Id. at 371 (citing Black's Law Dictionary, 6th ed.). The court further pointed to Georgia case law defining accident as "an unexpected happening rather than one occurring through intention or design." Id. (citing City of Atlanta v. St. Paul Fire and Marine Ins. Co., 498 S.E.2d 782 (1998)). The court concluded that "an occurrence can arise where faulty workmanship causes unforeseen or unexpected damage to other property" and rejected the argument that the faulty workmanship could not be considered an accident merely because it was performed intentionally. Id. at 372. The court further stated, "[A] deliberate act, performed negligently, is an accident if the effect is not the

8

intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." Id. (citing Lamar Homes v. Mid-Continent Cas. Co., 242 S.W.3d 1, 16 (Tex. 2007)).

Defendants' arguments in favor of summary judgment are based exclusively on Hathaway. HeritageBank's Mot. Summ. J. 7-11, Dkt. No. 24-3; Forks's Mot. Summ. J. 3-5, Dkt. No. 19. Defendants believe that Hathaway significantly changed the course of Georgia insurance law, which Defendants characterize as taking an improperly restrictive view of "occurrence" as that term is used in CGL policies. Forks' Mot. Summ. J. 3. Defendants assert that Hathaway stands for the proposition that "a deliberate act (such as cutting this timber) performed negligently (by not conducting a title examination first) is an accident if the effect of the intentional acts is not an intended or expected result." Id. at 4. The Defendants conclude that "[Hathaway] effectively overrules Macon Iron." HeritageBank's Resp. 2, Dkt. No. 42.

### III. Analysis

Under Georgia law, the allegations contained in a complaint against an insured "provide the basis for determining whether liability exists under the terms of the [insured's] insurance policy." See Georgia Farm Bureau Mut. Ins. Co. v. Hall Cnty., 586 S.E.2d 715, 717 (Ga. Ct. App. 2003) (holding that

9

allegations in a complaint against an insured, asserting that the insured failed to inform a timber harvester that the county held a lien on timber, did not constitute an accident as that term was used in the insurance policy); City of Atlanta v. St. Paul Fire & Marine Ins. Co., 498 S.E.2d 782, 784 (Ga. Ct. App. 1998). Therefore, the Court must compare the underlying complaint to the CGL Policies at issue.

In the Bacon County Litigation complaint, HeritageBank asserts a claim for conversion under Georgia law. See Bacon County Compl., Dkt. No. 24, Ex. B (titled "Complaint for Conversion"). Conversion requires "an intentional exercise of dominion or control over a chattel" which seriously interferes with the right of another to control the chattel. Restatement (Second) of Torts § 222A (1965). Nothing in the Bacon County complaint indicates that HeritageBank seeks to recover under any other legal theory.[5] It is clear from the Bacon County Litigation complaint that HeritageBank is asserting a claim for

---

[5] The Bacon County Complaint also seeks an award of punitive damages under O.C.G.A. § 51-12-5.1 in connection with the conversion claim. The inclusion of the request for punitive damages further highlights the fact that HeritageBank is seeking recovery for intentional conduct on behalf of Forks, given that punitive damages may only be awarded where a defendants actions show "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1. See Georgia Farm Bureau Mut. Ins. Co. v. Hall Cnty., 586 S.E.2d 715, 718 (Ga. Ct. App. 2003) (observing that by seeking punitive damages in an underlying complaint, the plaintiff "explicitly alleged that the act was intentional or at least evinced an expectation of harm.").

conversion based on Forks's intentional exercise of dominion and control over the encumbered timber.

The CGL Policies at issue define an occurrence as an accident, but do not define accident. Under Georgia law, when used in an insurance policy, accident is defined as "an event happening without any human agency, or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens. . . . [I]n its common signification the word means an unexpected happening without intention or design.'" Hathaway, 707 S.E.2d at 371 (citing Black's Law Dictionary, 15 (6th ed. 1990); St. Paul, 478 S.E.2d 418, 420 (Ga. Ct. App. 1996)). There is no question that unintentional acts that cause unintentional injuries constitute accidents under Georgia law. However, there has been some dispute over whether intentional acts which cause unintended injuries can ever constitute an accident. Compare Owners Ins. Co. v. James, 295 F. Supp. 2d 1354, 1364 (N.D. Ga. 2003) (holding that injuries caused by intentional acts are not covered occurrences) with Essex Ins. Co. v. H & H Land Devel. Corp., 525 F. Supp. 2d 1344, (M.D. Ga. 2007) (questioning Owners, and holding that an event set in motion by intentional conduct could constitute a covered occurrence). However, the Georgia Supreme Court recently clarified that there are some instances where a deliberate act, performed negligently, may

11

constitute an occurrence. Hathaway, 707 S.E.2d at 372 (holding that negligent, faulty workmanship which causes damage to surrounding property may constitute an accident). Although the full reach of Hathaway is not perfectly clear,[6] the case seems to eschew any categorical rule that intentional conduct cannot form the basis of an accident – and thus a covered occurrence – as that term is used in an insurance policy.

In their motion for summary judgment, Defendants ask the Court to rule that a commercial general liability insurance policy covers an insured's decision to harvest timber without taking steps to ensure the timber is free from encumbrances. Defendants contend that Hathaway mandates such a result. However, nothing in Hathaway supports such a broad reading. Hathaway stands for the proposition that unforeseeable damage to surrounding property, caused by negligent, faulty workmanship constitutes an "accident" as that term is used in commercial general liability insurance policies. Defendants read Hathaway as holding that *any* intentional act can give rise to an "accident" so long as the legal consequences of that act are not

---

[6] The Court is aware of only three opinions citing Hathaway, none of which clearly define the opinion's scope. See Greystone Const., Inc. v. Nat'l Fire and Marine Ins. Co., 661 F.3d 1272, 1282 (10th Cir. 2011) (citing Hathaway as an example of a the trend in cases defining occurrence to cover damage resulting from poor workmanship); Rosen v. Protective Life Ins Co., 817 F. Supp. 2d 1357, 1369 (N.D. Ga. 2011) (citing Hathaway for general contract provisions); IFCO Syss. N. Am., Inc. v. Am. Home Assur. Co., 797 F. Supp. 2d 660, 669 (D. Md. 2011) (distinguishing between the negligent workmanship conduct in Hathaway and the conversion occurring in the principle case, and limiting the applicability of Hathaway to faulty workmanship cases).

intended. Hathaway's holding is not so broad. The court in Hathaway held that "an occurrence can arise where faulty workmanship causes unforeseen or unexpected damage to other property." Hathaway, 707 S.E.2d at 372. In support of this statement, the court rejected the insurer's argument that

> [A]cts of [the insured] could not be deemed an occurrence or accident under the CGL policy because they were performed intentionally. A deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly.

Id. (citing Lamar Homes v. Mid-Continent Cas. Co., 242 S.W.3d 1, 16 (Tex. 2007)). Taken together, these two statements clarify that an insurer cannot dispute coverage for damage related to faulty workmanship based on the fact that the insured intentionally performed the work. The passages do not state that any and all intentional acts may form the basis of an accident, as the Defendants would have the Court hold.

Without some indication to the contrary - either in the text of Hathaway or from the Georgia courts - this Court reads Hathaway as limited to faulty workmanship cases. This is not a case about negligent, faulty workmanship, and, accordingly, Hathaway does not apply. Furthermore, nothing in Hathaway indicates that the conduct in this case should qualify as an accident under a commercial generally liability insurance policy. Hathaway does not define an accident as intentional

AO 72A (Rev. 8/82)

conduct causing the intended physical consequences, but which results in unintended legal consequences, as was the case for Forks. Perhaps, Hathaway opens the door to coverage for a timber company that negligently cuts down a tree, causing the tree to fall and crush an automobile on neighboring property. The case does not, however, support coverage for the intentional harvesting of timber that the harvester mistakenly believes to be free from legal encumbrances. Defendants' motions for summary judgment are based exclusively on Hathaway, and because that case is not applicable here, Defendants' motions are denied.

The Insurers also seek summary judgment, relying primarily on Macon Iron. Notably, Hathaway leaves untouched the principle described in Macon Iron, that conduct must result in unintended consequences to be deemed an "accident." In fact, Hathaway reaffirmed that principle, recognizing that Georgia case law defines the term "accident" in an insurance policy as "an unexpected happening rather than one occurring through intention or design." Hathaway, 707 S.E.2d at 371. Georgia law does not view erroneous legal beliefs or unintended legal consequences as the sort of "unintended consequences" necessary to constitute an accident. See Georgia Farm Bureau Mut. Ins. Co. v. Vanhuss, 532 S.E.2d 135, 136 (Ga. Ct. App. 2000) (holding that an insured's intentional conduct in operating a poultry farm which caused

trespass and nuisance to neighboring property was did not constitute an accident); Georgia Farm Bureau Mut. Ins. Co. v. Meriwether, 312 S.E.2d 823, 823-24 (Ga. Ct. App. 1983) (holding that an insured's intentional conduct in blocking a road under the erroneous belief that the road was on his private property did not constitute an accident). Therefore, in order to constitute an accident, conduct must result in unintended real consequences, rather than simply legal consequences.

It was precisely this principle that drove the finding of no coverage in Macon Iron. In Macon Iron, the court rejected coverage for intentional conduct that went according to plan, but that ultimately had unexpected legal consequences. Macon Iron cannot be distinguished from the present case. Here, as in Macon Iron, the insured engaged in intentional and deliberate conduct, and in both cases the insured made a mistake about the legal consequences of its actions. In fact, in both instances the insured made a mistake about the ability of an individual to sell certain items. The only distinction is that Macon Iron dealt in scrap metal and Forks dealt in timber, which is, of course, no distinction at all.

Ultimately, the facts of Macon Iron are exceptionally similar to the ones now before the Court, and there is no indication – in Hathaway or elsewhere – that the principles relied on in Macon Iron have been abrogated. Therefore, Forks's

intentional conduct in harvesting timber under the erroneous belief that the timber was unencumbered, and failing to perform a title search, does not constitute an accident as that term is used in the CGL Policies.  Because the conduct does not constitute an accident, the conduct also does not constitute an occurrence under the CGL Polices.  In absence of an occurrence, the Insurers are not obligated to defend, provide coverage to, or indemnify Forks.  Accordingly, the Insurers motion for summary judgment is granted.

For these reasons, Defendants' motions for summary judgment are **DENIED** and the Insurer's motion for summary judgment is **GRANTED**.  The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of the Plaintiffs.

**SO ORDERED**, this 28th day of August, 2012.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA